ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| CHRISTOPHER DÍAZ<br><br>Apelada<br><br>v.<br><br>SUN WEST MORTGAGE COMPANY, INC.<br><br>Apelante | KLAN202500121 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2023CV00942 (201)<br><br>Sobre: DESPIDO INJUSTIFICADO (LEY NÚM. 80) Y OTROS |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de julio de 2025.

Comparece ante *nos*, Sun West Mortgage Company, Inc., (Sun West o apelante) y nos solicita que revisemos una *Sentencia* emitida el 3 de febrero de 2025, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Guaynabo. Mediante dicho dictamen, el TPI declaró *Ha Lugar* la *Querella* que presentó Christopher Díaz (Díaz o apelado).

Por los fundamentos que se exponen a continuación, *confirmamos* la *Sentencia* apelada.

**I.**

El 18 de octubre de 2023, el apelado presentó una *Querella* sobre despido injustificado al amparo de la Ley Núm. 2 de 17 de octubre de 1961, Ley de Procedimiento Sumario de Relaciones Laborales, en contra de la parte apelante. En ajustada síntesis, Díaz alegó que había sido despedido injustificadamente por Sun West. Señaló que la parte apelante mantuvo a empleados con menor antigüedad dentro de la misma clasificación ocupacional que la suya. Agregó que Sun West no lo contrató nuevamente dentro de los

seis (6) meses siguientes a su cesantía, esto a pesar de que tuvo necesidad de contratar personas para funciones iguales o similares a las que realizaba.

Así, el 21 de noviembre de 2023, la parte apelante presentó una *Contestación a la Querella* mediante la cual negó que el despido haya sido injustificado. Luego de varios incidentes procesales, el 15 de mayo de 2024, las partes presentaron el *Informe Conjunto Preliminar entre Abogados Enmendado* (*Informe de Conferencia con Antelación a Juicio*). Entretanto, el 19 de junio de 2024, Sun West presentó una *Solicitud de Sentencia Sumaria.* En la misma, planteó que cumplió con el orden de retención, que no retuvo a empleado alguno dentro de la misma clasificación ocupacional que el apelado con menor antigüedad y que tampoco contrató a persona alguna para trabajar en la misma clasificación que Díaz luego de su cesantía.

Consecuentemente, el 29 de julio de 2024, el apelado presentó su *Oposición a Solicitud de Sentencia Sumaria.* En esta, sostuvo que Sun West no presentó prueba que demostrara que en efecto la reducción en las originaciones de los préstamos hipotecarios que sufrió se trató de una disminución sustancial al punto de atentar contra la continuidad de la empresa, para entonces justificar el despido. El 9 de septiembre de 2024, el foro primario celebró una Vista Argumentativa, mediante la cual declaró *No Ha Lugar* la solicitud de sentencia sumaria de la parte apelante.

Así las cosas, los días 16 de diciembre de 2024 y 30 de enero de 2025, se llevó a cabo el Juicio en su Fondo. Oportunamente, el 3 de febrero de 2025, el TPI emitió una *Sentencia* mediante la cual declaró *Ha Lugar* la *Querella.* Inconforme, el 13 de febrero de 2024, Sun West compareció ante *nos* mediante un recurso de *Apelación* y alegó la comisión de los siguientes errores:

a. ERRÓ EL TPI AL DETERMINAR QUE EL PESO DE LA PRUEBA LE CORRESPONDÍA A SWMC A PESAR DE QUE LA LEY 4 ESTABLECIÓ QUE EL PESO DE LA PRUEBA LE CORRESPONDE AL EMPLEADO.

b. ERRÓ EL TPI AL FUNDAMENTAR SU SENTENCIA EN EL CASO DE SEGARRA V. INT'L SHIPPING AGENCY, INC., 2022 TSPR 31, 208 P.R. DEC. 964 (2022), YA QUE ESTE ES INAPLICABLE AL CASO DE EPÍGRAFE POR HABERSE RESUELTO EN EL CONTEXTO PREVIO A LA LEY 4.

c. ERRÓ EL TPI AL DETERMINAR QUE EL DESPIDO FUE INJUSTIFICADO CUANDO DÍAZ NO PUDO PROBAR QUE SU CESANTÍA FUE INJUSTIFICADO Y QUE LA RAZÓN PARA LA CESANTÍA ERA ILEGÍTIMA.

d. ERRÓ EL TPI AL DETERMINAR QUE LA REDUCCIÓN EN LAS ORIGINACIONES DE PRÉSTAMOS NO ESTUVO RESPALDADA POR PRUEBA CUANDO LA RAZÓN DE LA CESANTÍA FUE UN HECHO ESTIPULADO POR LAS PARTES QUE RELEVÓ A SWMC DE PRESENTAR PRUEBA AL RESPECTO.

El 18 de febrero de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte apelada para presentar su alegato en oposición. Entretanto, el 21 de febrero de 2025, Sun West presentó una *Moción para Transcripción de la Prueba Oral*. Posteriormente, el 27 de febrero de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte apelante para presentar la Transcripción de la Prueba Oral Estipulada. El 4 de marzo de 2025, la parte apelada presentó su *Alegato en Oposición a Apelación*.

Luego de varios acontecimientos procesales, innecesarios pormenorizar, el 7 de abril de 2025, la parte apelante presentó una *Moción Sometiendo Transcripción Estipulada del Juicio […]*. El 22 de abril de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de treinta (30) días a la parte apelante para presentar su alegato suplementario. El 27 de mayo de 2025, la parte apelante presentó su *Alegato Suplementario*. Asimismo, el 16 de junio de 2025, la parte apelada presentó un *Alegato Suplementario en Oposición*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Ley Núm. 80 de 30 de mayo de 1976**

Como se sabe, existe un interés apremiante del Estado en regular las relaciones obrero-patronales, enmarcado ese interés en una política pública dirigida a proteger los derechos de los trabajadores. *Rivera v. Pan Pepín*, 161 DPR 681 (2004). *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001). Consecuentemente, se adoptó la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (29 LPRA sec. 185a *et seq.*), conocida como *Ley Sobre Despidos Injustificados* (Ley Núm. 80-1976), cuyo fin es proteger a los empleados de actuaciones arbitrarias del patrono al disponer de remedios económicos que desalienten los despidos injustificados. *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022). Véase, además, *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015); *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643 (2014).

Conforme a lo anterior, el Artículo 1 de la Ley Núm. 80-1976, *supra*, establece que todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono una indemnización. Ese resarcimiento se conoce comúnmente como *la mesada* y constituye un remedio exclusivo disponible para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despedido. *Ortiz Ortiz v. Medtronic, supra*; *León Torres v. Rivera Lebrón, supra*. No obstante, lo anterior, no existe una prohibición absoluta en contra del despido de un empleado, ya que este puede ser despedido si existe una justa causa, pero si no lo hay entonces se configura la repercusión de que el patrono deberá asumir el pago de la mesada a favor del empleado. *Ortiz Ortiz v. Medtronic, supra.*

Así pues, nuestro máximo Foro ha reiterado que la Ley Núm. 80-1976, *supra*, cumple dos (2) propósitos fundamentales, a saber: (1) desalentar la práctica de despedir a empleados sin que medie justa causa, y (2) proveerle a los empleados remedios consustanciales a los daños causados por los despidos injustificados. Íd. Véase, además, *González Méndez v. Acción Social et al.*, 196 DPR 213 (2016). Así, en vista de su propósito reparador, la Ley Núm. 80-1976, *supra*, debe siempre interpretarse de manera liberal y favorable al empleado. *Jusino et al., v. Walgreens*, 155 DPR 560 (2001).[1]

A pesar de que la Ley Núm. 80-1976, *supra*, no define lo que constituye un despido injustificado, el estatuto expone de forma ilustrativa ciertas instancias en las que se justifica el despido de un empleado por parte del patrono. *Ortiz Ortiz v. Medtronic, supra*; *León Torres v. Rivera Lebrón, supra*. A esos efectos, el Artículo 2 de la Ley Núm. 80-1976 (29 LPRA sec. 185b), establece, entre otras cosas, que se entenderá como justa causa para el despido de un empleado: (1) cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo; (2) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; y, (3) reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que

---

[1] Antes de la entrada en vigor de la Ley Núm. 4 de 26 de enero de 2017, *Ley de Transformación y Flexibilidad Laboral*, cuando un empleado instaba un pleito al amparo de la Ley Núm. 80-1976, *supra*, se activaba la presunción de que el despido fue injustificado y recaía sobre el patrono la obligación de rebatirla. Sin embargo, con las enmiendas introducidas por la Ley Núm. 4-2017, *supra*, el peso de la prueba recae sobre el empleado, quien debe demostrar que fue despedido sin justa causa. No obstante, una vez el empleado presenta prueba de que fue despedido sin justa causa, la carga de la prueba se transfiere al empleador, quien debe demostrar que el despido fue por justa causa.

prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

## B. Reorganización y reducción de empleados

Conforme a lo antes expuesto, la reorganización constituye una actuación del patrono respecto a la administración de su negocio y ocurre por razones económicas que enfrenta su operación diaria. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964 (2022). Sin embargo, no se requiere necesariamente experimentar una reducción en el volumen de producción, las ventas o las ganancias de la empresa en su conjunto para que se justifique la reorganización. *Íd.* Así pues, el patrono podrá tomar la decisión de reorganizar la empresa por cualquier motivo, siempre que se trate de una decisión empresarial válida, de utilidad y no por mero capricho. *Íd.*

Cónsono con esto, nuestro máximo Foro ha expresado que el Artículo 2 la Ley Núm. 80-1976, *supra*, permite despedir empleados sin tener que pagar la compensación fijada por ese estatuto si esta decisión se toma como parte de una reorganización empresarial que así lo requiere. *SLG Zapata Rivera v. J.F. Montalvo*, 189 DPR 414 (2013). Así, un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*. *Íd.* A esos efectos, una reorganización *bona fide* es aquella que no es por mero capricho, sino que es producto del manejo de la empresa. *Íd.*

Ahora bien, la única limitación que impone esta ley es retener con preferencia a los empleados de mayor antigüedad siempre que existan puestos vacantes u ocupados por empleados de menor antigüedad dentro de su misma clasificación ocupacional, y no entre

clasificaciones ocupacionales distintas. Artículo 3 de la Ley Núm. 80-1976 (29 LPRA sec. 185c). Aun así, el Tribunal Supremo ha establecido que los cambios empresariales pueden acarrear el despido y el reclutamiento a la misma vez. *SLG Zapata Rivera v. J.F. Montalvo, supra.*

Consecuentemente, si la razón para el despido fue la reorganización empresarial, la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que tiene que probar que, en efecto, se realizó una reorganización de buena fe y que, como parte de ese plan, el empleado fue despedido. *Segarra Rivera v. International Shipping Agency, Inc., supra.* Es decir, el patrono debe demostrar que la modificación de su forma de realizar negocios se hizo en consideración del buen y normal funcionamiento de la empresa. Asimismo, nuestro Tribunal Supremo estableció que, para demostrar justa causa basta con articular y presentar prueba sobre una razón válida para el despido. *Íd.* En ese sentido, la obligación que impone la Ley Núm. 80-1976, *supra,* de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o un plan de reestructuración de una forma particular o especifica. O sea, basta con que el patrono demuestre que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así tendrá que acreditarlo. *Segarra Rivera v. International Shipping Agency, Inc., supra.*

De otro lado, una circunstancia distinta es la reducción en el volumen de producción, ventas o ganancias, según establecida en el inciso (f) del Artículo 2 de la Ley Núm. 80-1976, *supra.* El Tribunal Supremo ha establecido que, si el patrono pretende justificar el despido al amparo de dicho inciso, debe presentar evidencia que acredite la presunta reducción en la producción, las ventas o ganancias. *Segarra Rivera v. International Shipping Agency, Inc., supra.* Por lo cual, el patrono debe establecer un nexo causal entre

las circunstancias económicas de la empresa y la necesidad del despido. *Íd.*

## C. La discreción del Tribunal de Primera Instancia

La *discreción* es la facultad de los tribunales de justicia para resolver de una forma u otra y de escoger entre varios cursos de acción. Al foro primario se le reconoce una amplia discreción. Sus decisiones merecen gran deferencia, debido a que es el foro que conoce las particularidades del caso, tiene contacto con los litigantes y examina la prueba. La única limitación es que la medida sea adecuada y razonable. El ejercicio adecuado de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad. La *discreción* es una forma de razonabilidad aplicada al discernimiento judicial con el propósito de llegar a una conclusión justiciera. Se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. Los tribunales apelativos no debemos intervenir con las determinaciones discrecionales del foro primario con el objetivo de sustituir su criterio por el nuestro. No obstante, esa deferencia cede, cuando el Tribunal de Primera Instancia actúa con prejuicio, parcialidad, incurrió en craso abuso de discreción o incurrió en error manifiesto. *Citibank et al v. ACBI et al,* 200 DPR 724 (2018).

Ahora bien, no resulta fácil precisar cuando un Tribunal abusa de su discreción. Sin embargo, no debemos tener duda que el adecuado ejercicio de discreción descansa en un juicio de razonabilidad judicial para llegar a una conclusión justiciera. *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170 (1992); *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Como sabemos, existen ciertas guías para poder determinar cuando un tribunal abusa de su discreción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009). Así pues, un tribunal incurrirá en un abuso de discreción - *inter alia* - cuando el juez no toma en cuenta e ignora en la decisión que emite

- sin fundamento para ello - un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario - sin justificación ni fundamento alguno - concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *García v. Padró*, 165 DPR 324 (2005)*; Pueblo v. Ortega Santiago*, 125 DPR 203 (1990).

### D. La apreciación de la prueba

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de Procedimiento Civil (32 LPRA Ap. V). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín, supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se

estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres,* 117 DPR 645 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services,* 185 DPR 431 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que dicho foro, es el único que observa a las personas que declaran y aprecia su *demeanor. Ramírez Ferrer v. Conagra Foods PR, supra.* Véase, además, *Trinidad v. Chade,* 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy Inc.,* 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de Procedimiento Civil, *supra.* Véase, además, *Rivera Menéndez v. Action Services, supra*; *Monllor Arzola v. Sociedad de Gananciales,* 138 DPR 600 (1995). No obstante, sí, de un examen de la prueba, se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer PR, Inc. v. Rodríguez,* 100 DPR 826 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172 (1985).

**III.**

Por estar íntimamente relacionados, discutiremos los cuatro (4) señalamientos de error de forma conjunta. *Veamos.*

Sun West planteó que erró el TPI al determinar que el peso de la prueba le correspondía a pesar de que la Ley Núm. 4-2017, *supra,* estableció que el peso de la prueba le corresponde al empleado. Asimismo, arguyó que erró el foro primario al fundamentar su *Sentencia* en el caso de *Segarra Rivera v. International Shipping Agency, Inc., supra,* ya que este es inaplicable al caso de epígrafe por haberse resuelto en el contexto previo a la Ley Núm. 4-2017, *supra.*

Además, señaló que erró el TPI al determinar que el despido fue injustificado cuando Díaz no pudo probar que su cesantía fue injustificada y que la razón para la cesantía era ilegítima. Por último, adujo que erró el TPI al determinar que la reducción en las originaciones de préstamos no estuvo respaldada por prueba, cuando la razón de la cesantía fue un hecho estipulado por las partes que lo relevó de presentar prueba al respecto.

En el caso ante *nos,* luego de realizar el Juicio en su Fondo y aquilatar la prueba presentada el foro primario determinó que el despido del apelado fue injustificado. Así, el TPI sostuvo que la parte apelante debía presentar evidencia que acreditara el motivo aludido para la terminación de empleo, es decir, la presunta reducción en el volumen de originación de préstamos, máxime ante un cuestionamiento amplio de despido injustificado. Asimismo, el foro primario concluyó que la alegación de la parte apelante, de una reducción en el volumen de originación de préstamos hipotecarios, está huérfana de evidencia documental y testifical. Añadió que, no existe un documento explicativo de la presunta necesidad de supresión de la plaza de empleo, con mención de la reducción en volumen de préstamos, puesto que el despido se notificó por teléfono. Finalmente, acentuó que ninguno de los gerenciales participantes en la toma de la decisión declaró en el juicio.

Según el derecho que antecede, una de las razones que constituye justa causa para el despido de un empleado es las reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias,

anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. Artículo 2 de la Ley Núm. 80-1976, *supra.* Ciertamente, nuestro máximo Foro ha establecido que, si el patrono pretende justificar el despido al amparo de la reducción en el empleo debido a la reducción en el volumen de producción, ventas o ganancias anticipadas, debe presentar evidencia que acredite la presunta reducción en la producción, las ventas o ganancias. *Segarra Rivera v. International Shipping Agency, Inc.*, *supra.* Así, el patrono debe establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido. *Íd.*

En el caso ante *nos*, no encontramos fundamento alguno en la prueba documental, testifical e incluso en los argumentos de la parte apelante para determinar que el despido fue uno justificado. A pesar de que, es a la parte apelada a quien le corresponde el peso de la prueba para probar que su despido fue injustificado, como correctamente hizo, una vez Díaz presentó la prueba de que fue despedido sin justa causa, la carga de la prueba se transfirió a la parte apelante quien debió demostrar que el despido fue por justa causa.

Así pues, la parte apelante debió presentar prueba de que el despido del apelado se debió a una reducción en el empleo como consecuencia de la reducción en el volumen de producción, ventas o ganancias y no lo hizo. Es decir, la parte apelante no logró probar su alegación de reducción en el volumen de originación de préstamos como fundamento para el despido. Tampoco estableció un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido. *Segarra Rivera v. International Shipping Agency, Inc.*, *supra.*

Asimismo, es importante destacar que según surge de la Transcripción de la Prueba Oral (TPO), el testimonio de Kimberly

Rodríguez estableció que en Puerto Rico se despidió un (1) solo empleado, de aproximadamente cincuenta (50) empleados. Además, surge, tanto del testimonio de Díaz como de Kimberly Rodríguez, que a seis (6) meses del despido del apelado por una presunta reducción en el volumen de originación de préstamos, la parte apelante abrió una convocatoria de empleo para diversas plazas. Dicha situación es a todas luces incongruente.

Con relación al argumento de la parte apelante, de que la razón de la cesantía fue un hecho estipulado por las partes que lo relevó de presentar prueba al respecto, es preciso determinar que las partes no estipularon que la baja en ingresos se trató de una disminución sustancial al punto de atentar contra la continuidad de la empresa, ni se estipuló que dicha justificación era válida. Además, tal y como expresó el foro primario en su *Sentencia,* existía controversia sobre que el despido fuese parte de un plan de cesantía como consecuencia de una reducción sustancial en el volumen de negocios, razón por la cual el TPI determinó no dictar sentencia por la vía sumaria.

A la luz de lo anteriormente expuesto, le otorgamos deferencia al foro primario con relación a las determinaciones de hechos y apreciación de la prueba testifical. En consecuencia, no se cometieron ninguno de los errores señalados por la parte apelante. La actuación del foro primario no estuvo desprovista de una base razonable, ni medio pasión, prejuicio, parcialidad o error manifiesto.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones